Commissioner Stolarz. Good morning, Your Honor. John B. Stolarz representing Dr. Collins, the appellant in this case. This morning I'd like to focus in on the primary purpose for this appeal, and that is the reasons given by the defendant for transferring and demoting Dr. Collins to a position at another school. Dr. Collins was born on June 16, 1946. She was with the Baltimore City Schools for... We know the facts of the case. You might want to go right to your legal argument. The primary argument in this case is that the court required what the Supreme Court had discarded and said was not necessary, was pretext plus. And the reason I say that the lower court concluded, the lower court found that it was pretext plus was on, and this is from the joint appendix page 800, it says, after finding that there is a prima facie case... Well, I don't think the district court ever found that. It just assumed at least one prong of that analysis and moved on to this pretext discussion. That's correct. I don't know that I agree with, frankly, but go ahead. Okay. Well, the appeal was based on the fact that there was a prima facie case and that the court found that beyond the prima facie case, there was nothing, and I'm quoting from page 13 of the opinion, there is nothing that tends to indicate that Collins' race had anything to do with her transfer. And the same is said about her age. What evidence is there of that? There is none other than the prima facie case, Your Honor. And I submit to the court that that is sufficient under Reeves. And this court, although not in published opinions, has followed Reeves and has, in fact, held that it is sufficient... Do you think evidence of pretext alone meets the required burden of persuasion at summary judgment? I'm sorry? Do you think evidence of pretext alone would meet your burden of persuasion at summary judgment? If the plaintiff showed that there was pretext, there was sufficient evidence adduced, which shows that if all the inference are viewed in light of the plaintiff... You're going a long way around. I'll just ask you a simple question. Is evidence of some type of pretext alone, is that enough for you to get past summary judgment? According to what the Reeves court said, yes. Okay, the answer is yes. Yes, but... What if there's pretext that the school took her letter to be a request for a transfer when they really just were looking for an excuse to move her, except my condition now, for a reason other than race or age? What if they just didn't like her? What about that? Would you be allowed to proceed past summary judgment? If that was shown at the summary judgment, no, Your Honor. I agree with the court. To follow up on that, what does this... I mean, what does this have to do... How is there a tribal issue of fact that this was racially motivated? Again, Deanna, who is the school principal, and Miss Collins, maybe they get along, maybe they don't get along, maybe they were looking for a reason to transfer, maybe they weren't. But where's the evidence that this school principal was racially motivated? Because that's the ultimate burden. You have to raise a tribal issue of fact on that point. Well, the court and this court, in unpublished opinions, this recently has in fact held that that is enough, as long as the plaintiff shows that the pretext was insufficient, was false, and that there was the transfer of duties to someone who was younger, or in the case I was referring to in this court was Caucasian, and no other reason was given by the defendant. Now, I would like to point out something else. In the briefs, you will find that the defendant has not established that in fact someone took over the position, did not explain in any cogent way why. On one point, Miss Deanna, who is Caucasian, by the way, says that she requested the transfer, yet no one spoke to Miss Collins, But what's your evidence of pretext in this case? What is the evidence of pretext in this case? The evidence of pretext is the fact that at one point, Miss Deanna says that she requests the transfer. The letter clearly does not. The other, in her affidavit, in support of the motion, of the response, Miss Collins denies it. Just let me ask this, though. I'm sorry. This is from the letter. I can only hope that this September my decision will not affect anything. I have to take this chance to have a new beginning. What if the school administration took that, mistakenly as it may be in your mind, as a request for a transfer? I think that would be evidence maybe of a mistake, but why would that be evidence of pretext? Well, on page 270 of the joint appendix is the form, which was filled out by the administration, Dr. Bond. It says it's reassignment, demotion, voluntary transfer is not checked off, and there is a $4,000 decrease in pay. Now, why would Miss Collins want to get transferred? She didn't say what position she wanted in the letter. That's the point. Listen, it could have been a mistake. I'm trying to distinguish now a very fine point between how do we distinguish between an employer making a mistake in hindsight and pretext. A person might want to go to another school because they don't like the colleagues, they don't like that they've been there for that many years. It could be any number of reasons, and maybe after the fact the school could realize maybe it was a mistake and maybe she really didn't want the transfer, but how does that get turned into pretext? That's what I'm asking you. Because the court at summary judgment should disregard that and should accept. No, that can't possibly be. I don't even want to talk about disregard. Why? Well, not disregard it, but in ruling on it should consider the inference. No, no, no. We have to go somewhere else, I think. I think if the district court looks at this letter and says, you know, I don't know that I would have read it that way, but I can't say the school couldn't have read that as a request for a transfer, maybe they were just wrong. But that doesn't make it pretext. That's not evidence of pretext. But that's also a question of fact if it's ambiguous. No, it's not. Not a question as to why they did what they did. Is there any other evidence of pretext? You said that the salary in the new job was lower. Is there anything else? You said the form wasn't checked as voluntary on their forms. Is that right? Well, there was the testimony of Dr. Budd. The testimony. Let me say first, you say the letter itself shows that she didn't ask for it. You say that she was going to a position with lower pay, and you say that I thought she said something about the form wasn't checked voluntary. Did you say that? It said reassignment and demotion of voluntary transfer, which in this case if she requested it should have been checked off. So you did say it wasn't checked. It was not checked. I'm asking you. And now you want to add something else about Dr. Bond or Mr. Bond. During the testimony in his deposition, and that's brought out in the brief, he testified there was request of voluntary request by Ms. Collins. The other side is this. Testified to what? That Ms. Collins requested that Ms. Deanna, the principal, told him that Ms. Dr. Collins requested the transfer. That was the testimony of the deposition. That's just evidence of a mistake again. Well, it could be, but it could be evidence of intentional conduct, and that's the point, isn't it? There might be a tribal issue here as to whether or not this purported justification was, in fact, the right one, or whether there was something else involved. Yes, I just had a ---- You have to have some basis, though. The inference has to be reasonable. If it's not, if it's nothing more, then it could be one, it could be the other, nothing more. That's not a reasonable inference because how would the jury pick between them? How would the jury pick between them when you say she said that? It could be a mistake. It might not be a mistake. The jury has to make a reasonable determination. How do they decide between pretext and mistake on just that information? Because they can infer from the fact that the defendant is dissembling that there was an illegal reason. In addition to the letter, she verbally requested a new beginning. No, no. In fact, her affidavit, which is in support, which is in here, clearly says she never requested anything. If I saw a letter from the manager, somebody saying, I want a new beginning or I want a new start, I don't know how I would interpret it, but I know I could well interpret it that this individual is not happy here. Your Honor. This individual is not happy in this environment. I don't think that's an unreasonable interpretation. But beyond that, I just sometimes when you just kind of clear away the fog, even if it wasn't a reasonable interpretation, even if the school principal had wanted to get rid of her, there could have been a thousand other reasons to want to get rid of her other than race or age. I mean, ultimately you have to join issue under the Sellotex case on the question of this is racially motivated as opposed to a case of a few people who just weren't clicking and weren't getting along. I don't see any evidence of other personnel moves by Deanna which were racially motivated. Nobody else is coming in on the summary judgment record and saying that this is a school principal who is racially biased in some way. Are there other instances where racial discrimination has been afoot? I just don't see what the evidence is that whatever disagreement between these two individuals, unfortunate that it is, was related to race other than a host of other issues that arise in a school context which is what courses do I get to teach? What hours do I get to teach? How many students do I get to have in class? What textbooks do I get to use? How much of a lunch break do I get? And those issues between staff and principals arise every day in every school but they don't pertain. People can disagree on those issues without there being a racial component. Your Honor, then why not say so? Why not in the deposition or affidavit say I did not like her? That's not unlawful. That's not unlawful. Why not say that if that was, in fact, one of the reasons? Why dissemble? Why lie? But let me point out something else about that letter. The letter, if you read the first part of that letter, you will see that she is writing that letter to tell the principal that she will not be able to do any summer courses, teach any summer courses, and this is supported by Ms. Collins' affidavit which says why she wrote that letter. She never intended. That affidavit doesn't count, though, because the school didn't have that affidavit at the time that they made the decision. So you have to find it in the letter. Let me ask you, didn't Mr. Bond say that he talked to Ms. Collins and she was reluctant to take the transfer? She wanted to go back. That's not my question to you. I said did he say in his deposition that Ms. Collins was reluctant to take the transfer? I believe so. Well, did he say that it wasn't voluntary? Didn't Mr. Bond say that because the form? He signed a form that says the voluntary transfer is not checked off. Right. So he said it was not voluntary. Right. And then he also said she was reluctant to take the transfer. Did he say anything to her about a grievance, Mr. Bond? Well, he said something along the lines, if my memory is correct, is you can retire or you can take the transfer, retire, or I believe he also said you can wait until the position opens up. He never offered to put her back. So my question was to you, is there anything in the record that suggests Mr. Bond told your client or encouraged her to file a grievance, and you say you don't know? I don't recall. Don't you think that would be important? Or you don't think that would be important? Well, the grievance was, in fact, filed. That was the grievance. That's not my question to you. I didn't ask you the factual question. I said would it matter to your argument at all that the human resources person or whatever position Mr. Bond had somehow encouraged in this situation for your client to file a grievance? Would that matter? I guess it would matter. Okay. Thank you very much. Thank you. Thank you, sir. May it please the Court, I'm Leslie Stelman, representing the Baltimore City Board of School Commissioners. It's a very good point you raised, Judge Shedd, at the last question you asked opposing counsel. In fact, Mr. Bond said at one point in his deposition that he encouraged her to dispute this. Let me say this. I know that he did. That's why I asked the question. In fact, he said we could undo this. You could return to Patterson Park. Well, I don't think so. You add the second part to it. We may get into that. But let me ask you, on the question of pretext, why isn't it evidence of pretext that the school knew it wasn't a voluntary request, or it wasn't a request for a voluntary transfer, because the person, Mr. Bond, tell me his title. I call human resources. What was it? He was a human resource specialist. So the human resource specialist for the school district, in the middle of all this, that agent of the school knew this wasn't a voluntary transfer, and Ms. Collins was reluctant to take it. And knowing what he knew at the time, he encouraged her to file a grievance. Why isn't that evidence that the school administration knew this was not a voluntary transfer, and, therefore, their claim that it is, that be evidence that that's pretext? I would agree that it is evidence that it was not a voluntary transfer, but I would disagree respectfully that it is pretext or proof of pretext. Tell me why. I'd like to know why. This case began, and I think — I'm not completely sure, but it seems to me that is evidence of pretext. But I'll be glad to hear what you think. Well, at least evidence that the proper justification was false, which is really all that the plaintiff needs to show in order to at least suggest an inference of discrimination, or at least allow a jury to sort that out. Well, Judge Steers, I would respectfully disagree. That's what I'm calling pretext. I'm just saying that the reason they offered and they say is not the justification that they — why they were doing it. Then you have to go to another step. But that's the same issue I'm talking about. Just two weeks ago in James v. R.J. Reynolds' court, the Fourth Circuit, said that a mistake — and you're right, Judge Shade, you put your finger on it earlier — a mistake is not necessarily proof of pretext. The oral conversation testified to by Principal Deanna, followed by the letter, which could have many meanings, but in Ms. Deanna's own subjective belief, she thought this meant, this teacher's unhappy. Let me stop you there. Wouldn't a reasonable employer have inquired of the employee as to what exactly she meant by the letter? Yeah, you would think most reasonable employers would follow it up. But she didn't. But she didn't. Made an assumption, right? But, no, she didn't have to make an assumption. She had had an earlier conversation to which she testified, Your Honor, in which Ms. Collins said to her, I'm not happy. I'm not being appreciated here. I would like to be an assistant principal. You know, this is a fairly significant decision. I mean, this decision amounted to the plaintiff, in this case, not only losing her job as a teacher at the school, but her increased salary as the department head and this separate position as director of the outreach program. It seems to me that that's the kind of thing that a reasonable employer, who is not in the business of discriminating, would have sat down with that employee and made sure that this was, in fact, what the employee wanted. And, again, the jury may conclude otherwise, but why doesn't that at least raise an inference sufficient to allow the case to go to a jury? Because the reasonable interpretation, both from the subjective interpretation from a conversation that was testified to and the objective interpretation from the letter itself made it clear she was very unhappy. She wanted a new beginning. Now, maybe we should have inquired further, but we're in the process of moving hundreds of teachers every summer. It's going on all the time. Mr. Bond gets on the phone. Maybe it's not the greatest procedure. Maybe it should be more formalized. He gets on the phone with every principal in the system and says, is there any changes you want to make? And in this case, it's clear Ms. DeAnna said, we're not getting along, she and I. And it's clear that she wants to go. That's what Ms. DeAnna thinks. So Mr. Bond, then mistakenly believing that she is capable of teaching French and is certificated, which she wasn't, but she did teach French. We have all these charges and counter charges flying back and forth. But where is the evidence that any of this is related to race? None at all, Your Honor. That's the thing. There has to be some tribal issue on the plaintiff's ultimate burden. And Celotex makes that clear, that people make mistakes. People disagree. People have arguments. There are two mistakes here. Where is it related to race? That's where I don't get it. Mr. Bond's mistake about whether she could teach French, which, in fact, she could. She had taught French. Whether she was certificated was a technical issue. He should have looked at. He didn't. He assigned her to a school. She would be teaching in another school. There's no evidence that the working conditions were deliberately inferior. Yes, there was a loss of some pay, which, by the way, the record shows, but wasn't mentioned in briefs. It's red circled for one year. So for one year, she really would not have lost it. The paperwork was horribly badly done. I would agree. Is that pretext? No. It's a mistake. And there is an absence of any race-based decision making. There's no stray remarks. There is no direct evidence. There is nothing that even hints. Is there any circumstantial evidence that Ms. Deanna is motivated by racial concerns in her job as principal? Is there any other accusation with any other coworkers coming forward? Not a one. This is a school principal or a school administration that's dominated by concerns of race. I mean, normally those are the kinds of things that get into a summary judgment record. You have evidence from coworkers. You have evidence from other people. You have evidence of other instances. But, you know, it's... Your Honor, there's not a single iota of evidence of disparate treatment or any other person coming forward and saying, I too was a victim or I observed or witnessed victims of racial discrimination. That would be great, but I don't know that the plaintiff needed to present that kind of evidence at summary judgment. I think, assuming that the district court judge was correct, that she made out a prima facie case, and I'm not sure that that's right because I'm not sure that he was replaced by someone of a different race. Do you want to address that? I mean, I don't see... The district court judge assumed that. He assumed it for argument. I just don't think that's correct. That's correct. Judge Garbus below assumed for argument purposes that she'd made a prima facie case. But he just asked you, was that correct? No, it really wasn't. There was no... There may have been... Clearly she was a protected status. Clearly there was an alleged adverse action with respect to the loss of a position she had that paid higher money ultimately. But the most important piece, which is that another person who is younger and or of a different race... She was employed as a Spanish or French teacher, but wasn't Collins a department head? She had been a department head, and the record shows... Corey was not a department head. The record shows we were phasing those positions out. That's clear from the record. There's testimony from both Mr. Bond and Ms. Deanna that that was a school-wide, system-wide change. We were phasing it out, and she was not replaced. Okay, so let's... Frankly, I feel a little bit more comfortable about that. But what about the fact that she was in fact replaced as the director of this outreach program by a woman who was much younger? You've got an age discrimination claim here, which was also dismissed at summary judgment. She lost, I think it was, $3,500. There are a couple of pieces to that. Why isn't that sufficient to satisfy that claim? What we've not talked about, but it's mentioned in the footnote in my brief, is the Proud V. Stone issue. The record reflects that Ms. Deanna appoints every year department chairs and the Twilight Program directors. She had actually appointed the plaintiff, the appellant in this case, to those positions. So the same individual... Why would that same individual be motivated suddenly by race and age considerations to unappoint that person? And under this court's Proud V. Stone doctrine, which has now been adopted in at least a half a dozen circuits, that takes the pretext away. Substantial evidence against the concept of a pretext. But then we move to the other problem, which is the so-called younger person. First, it's not a race issue. They were both African-American. But the younger person who had, in fact... There was evidence that the appellant had gotten the job at some point over a younger person in the past, again by Ms. Deanna. And the most important piece of all is that that Twilight Program position doesn't go with the school. It doesn't run with the land or run with the school. One could apply for that position year after year in one or any school one chooses. And the record is very clear on that. So the fact is that before Ms. Collins even thought to apply for that position, either at the new school to which she was assigned or to the school she had come from, she retired. She resigned and now claims a constructive discharge, which for a variety of reasons, starting with suitors versus Pennsylvania State Police, is clearly not the case. Did the woman who replaced her, did she get that position or did she just do some of the functions of that position? On the Twilight piece, she got that position versus the woman who was doing some functions of department chair but certainly wasn't making the money, wasn't given the responsibilities. And that was corroborated by other witnesses and other evidence. So the absence of a pretext is, Judge Garbus found... Just stop for a second. I want to take you back to that. It's a very fine issue that I want to talk to you about. I see the act, quite frankly, I don't think I see any racial or age motivation issue at all. But I want to focus on the issue of pretext. First, let me ask you this. Do you think evidence of pretext alone is enough to meet the burden of persuasion and proof in summary judgment? No. No, I think even Reeves left open. Reeves left that open. Okay. I don't think Reeves... So you think that a person could actually show pretext. Let's just give a hypothetical. The school said they moved me because I was better suited for another job and the fact is the person who did it just hates me personally. I dated, I'm just saying that. I dated her husband before she married him. She just hates me. So the reason given could be pretext, but it would have nothing to do with a civil rights discrimination case. Correct? Correct. That's your view. Now, let me go back again. Why isn't there though evidence of pretext in this case based on what Mr. Bond said? That in fact, although the school, doesn't the school call it a voluntary transfer, a request for voluntary transfer? They really don't. What do they call it? There's no paperwork. What do they call it? What they call it is an involuntary transfer. There's no question the paperwork reflects that. So in other words, wait a minute now. They say she didn't ask for a request in her letter, but we gave her one anyway? Is that the school's position? I've had that occur. I've been representing school districts long enough that it occurred. It actually happened. What happened here, Judge Shedd, was that... Just answer my question. Sure. The position of the school is Ms. Collins never asked for a transfer or to be moved somewhere else. That's the position of the school in this case? No, the position of the school is... I didn't think it was. ...that Ms. Deanna's belief was that Ms. Collins was manifestly unhappy. And she wanted to move? So somebody had to give here. And Ms. Deanna knew that a manifestly unhappy faculty member means that teaching and learning is going to suffer. So Ms. Deanna, in her mind, said, I've got to get her out of here. The school environment is going to suffer. I mean, you know, you've got... Every school principal knows that morale has, you know, got to remain high. And, you know, this school principal should surely allow complaints and the rest. But sometimes a school principal comes to the point that, yeah, I'm going to allow these complaints because it might help me to take some good reforms within the school. But sometimes we've all been in these environments. If you have somebody who's constantly grousing, constantly complaining and everything, it just undermines the teaching function in the whole institution. And a lot of times it undermines the cooperation and the teamwork and esprit de corps that sometimes is necessary in the school environment to get those kinds of things done. The letter and the conversation between... Wait a second. That letter wouldn't support any belief that this woman was constantly complaining and grousing. No, I didn't say that. The letter says I'm not appreciated. I believe, and the letter goes on and says that I need a new start. I need to have a new day, a new beginning, whatever you want to call it. Now, in another conversation testified by Ms. Deanna, she believed that the last straw was, I want to be an assistant principal but you're not qualified yet and I'm not going to make you that in my school. Well, that created unhappiness. The school's position today is, and it may have been, maybe I misunderstood it, I thought the school took her letter as a request for a new beginning to mean go somewhere else, move to another school. But you say that's not what the school thought. The school thought she was just unhappy. They had to address it and the school decided to address it by moving her. Essentially. Essentially, that's what you have. And that's why Mr. Bond truthfully filled out the form and said this is an involuntary transfer. Let me ask you, let me just, I want to quote a part of a recent, it's an unpublished opinion, but this is a recent iteration of what we think Reeves means. And we said there that the Supreme Court clarified in Reeves that a prima facie case of discrimination combined with evidence from which a jury could conclude that an employer's proper justification was false, not discriminatory, but false, supported an inference of discrimination sufficient to defeat summary judgment. If in fact the plaintiff met her burden under McDonnell Douglas as to race, and I'm not sure that she did because of the issue with Kelly Flores, he doesn't need to show actual racial discrimination to defeat summary judgment. She just needs to show that your clients proffered justification was false, or at least a jury could find that. Isn't that what we have here? Your Honor, Reeves though has a loophole, a big one, which says that if there's simply not any evidence or the evidence is weak of pretext and Reeves is an outrageous case where, where there was falsified information created, the cases that follow Reeves and open the door to trial are ones where there's proof that the employer manufactured or falsified information. Well, you've got the employee saying here saying she never requested a transfer on the face of the letter. There's at least a dispute as to whether he wanted a transfer or wanted to clear the air at her present place of employment. You've got a, a human resources specialist saying that the voluntary, the transfer was in fact involuntary. How much more do you need? If what you would need is if that forms had said a voluntary transfer, which we know to be false. Now you're talking, now you're in Reeves territory, but you're not there. And, and the court still, yeah, but why do you make flips the burdens back to under Burdine? The burden still falls back to the plaintiff with respect to Reeves. Um, the, um, the, the, the opinion does is, as I recall it, still underscore that the plaintiff bears the ultimate burden. Precisely. Approving the case and that there, that there, that in line with that, there has to be some tribal issue of fact that the decision was racially motivated. Now, you know, it, it's, it's a, um, it's a very serious thing, I think, to discriminate racially. It's an unlawful thing. But it's also a very serious thing to accuse somebody of being racially motivated. I mean, it's a very scarring thing for any human being to be accused of being a racist. Just as it is a very scarring thing for somebody to bear the brunt of racial discrimination. But it seems to me that Reeves, in cases that come afterwards, have still said, you know, before this club is leveled against somebody, and you can, you can scar somebody for life and ruin their career and everything else, with even the accusation that they're racially motivated. Nobody's going to hire them, nobody's going to look at them for hiring and all the rest. And, and the cases after Reeves have, have, have still indicated that there ought to be some, at least some evidence, some questions, some issues of tribal fact on that point before, you move, move forward. Precisely, Your Honor. There's still an ultimate, ultimate burden there. Now there, there are times when the pretext is so fraudulent or, or, or whatever, you know, you certainly don't need anything else. But there is that ultimate burden and all the cases, the cases still stress that. It's simply not a pretext that Miss Deanna misapprehended Dr. Collins. Listen to me. I want to stop you and I want to correct you on the record because I think you have boarded on making a misrepresentation of this court. I apologize. I asked you, did, did Miss, did the school take this letter as a request for a transfer? And what did you tell me? I said they, they, they didn't, they did not. They did not. But Miss, but Miss Deanna truly believe that Miss, that Dr. Collins was unhappy and would not have had a record in front of you. Look at page four 47. This is a deposition of Miss Deanna, right? And she's quoting starting on page four 46, the last paragraph for the letter. And she repeats what that is. And the question that page line four says on page four 47, and this paragraph led you to believe that she wanted a transfer. That's correct. Right now, do you want to change what you told me earlier? I think. I asked you if the school took that letter as a request for a transfer. And you told me, no. And the reason is there's a difference in the perception that Miss Deanna had perception, but it's all about perception. Judge shed what happened when it got to human resources. Miss Deanna said, and this paragraph led you to believe that she wanted to transfer. That's correct. Now, what am I misreading in that? That's Miss Deanna saying she took that paragraph of that letter from Miss Collins as a request or she wanted to transfer. Right. That's what you say. That is, or is not true. That's true. That's what she said. And the next sentence is that she told human resources. I got a letter that said she wants a new beginning. No way. That didn't change anything. But human. Wait a second. Now, you and I may have just a complete misunderstanding on English language. We miss. Well, I'm going to suggest to you, that's a, that's a flip answer and a glib answer, but I'm going to suggest to you, if you want to go down that road, you're going to be in more trouble. Listen, the record indicates that Miss Deanna thought the letter from Miss Collins was a request for a transfer. Correct. Yes or no. That's correct. That's what you told me. No. Earlier. I ultimately, when it got downtown to the central office, anything about, they treated it as an involuntary request because they didn't have an explicit written request for a transfer. No, no, stop. You told me, you told me in response to these questions that no, that they took that letter, that there was that Miss Collins was dissatisfied. And therefore the school district had to deal with that. And the school district decided the way to deal with that was to transfer her. That's what you told me. Correct. Remember I said to you, correct. That's how that's what you're saying now, but that's not correct. That's not correct. I asked you, did the school was that a record? Did the school take that letter to be a request for a transfer? You told me they did not. Miss Deanna said they did. And your whole case, as I've read it from the start is that in fact, that letter is the basis for the transfer because it was a request by Miss Collins. That's not what you argued here today, just about five minutes ago. My concern judge shed and you, you, you apprehended the confusion going on in this whole situation. Truly miss Deanna thought this was a request for a transfer and conveyed that to human resources downtown. She did human resources, realizing they didn't have paperwork that said, I want to transfer, had to treat it as an involuntary transfer. And they did. Well, let me ask you this. The school's position is what, that they misread the letter as a request for a transfer at worst. Yeah. They misread it. The letter as a request for a transfer. So, but then they, then they may have made a mistake, right? It's a mistake, but as a pretext, you need to let me, you need to stop. Let me finish. Because this is critical. I think the position of the school has been that she asked for the transfer. She maybe didn't do the paperwork and all, but the basis for everything we did was she told us she wanted to transfer. Now you honestly, that maybe this part, maybe I read you wrong, but I bet if we reviewed the transcript, it's not too much confusion about what you told me today. And you said to my surprise, you said the school position was something else. Was it that she requested a transfer? Is that the, is that why the school moved her? Yes or no? Our confusion judge. And I can't answer. Not any confusion. It's just, yes or no. Yes. And Deanna's mind. But by the time it got downtown, now it was clearly had to be treated as an involuntary because she had not put in the paperwork. That doesn't have anything to do with what the letter said. A letter, a letter was construed as a request for a transfer. Well, now let's stop for a second. I asked you that about five minutes ago and you told me no. Because by the time it got to human resources, they realized that it will have to be an involuntary transfer. The letter itself in the mind of the original decision maker, Miss Deanna was, it was a request. So then why did the school transfer her? They just decided on their own to transfer her. Correct. They realized she was unhappy and, and they just accepted Miss Deanna's request from, in the record. Is that in the record? Yes. I believe Mr. Bond was, was, was deposed and he said that he calls schools and he was told by Miss Deanna, this isn't working or words to that effect. No, no, no, no. He wants out. Mr. Bond said in his deposition that I call Miss Deanna and said, we may have to send her back. Right. He said, yep. Is he, he, he, he,  he, he first talked to Deanna judge said he first talks to Deanna and she says, I want her out. I need to know what the school's position is. I thought this whole case was built on the fact that this woman, Ms. Collins requested a transfer. Now, by the way, maybe we misread that letter, but we acted sort of in good faith that she requested a transfer and that's the basis on which we did everything. But you telling me that's not the case anymore, that although we made a mistake at first, we later realized, she didn't want to transfer, but we did it anyway. Essentially that's correct. And we did it because why, where would I find that in the record? It may be there, but quite frankly, I never knew that that was a school's justification. I thought it was, they did it in response to her request. And so maybe I just missed that. So we have to look at not only bond was, was, was respecting the wishes of a principal who wanted a teacher out that she believed wanted out. But Bob, but bond knew that at some point you tell me that she, that really she didn't want out. And I think that's right. Well, I agree. Judge Bob judge had bond clearly understood and speaking to Collins from his own testimony. What you say then is Collins was unhappy. Look at the decision at that point to see why it was made and what the justification was. And if that was pretext, and I was just no longer based. You, if I understand you correctly, the school's position is we transferred her not because she wanted to transfer, but because some other reason is that the school's position, our position is we thought she wanted to transfer by the time the paperwork was done. And bond interviewed Dr. Collins on the phone. Dr. Collins indicated she was not happy with that transfer, even though she was going to be teaching a course that she had taught in the past. Well, I don't care about all that stuff. I understand. So why was she at, what's the school's position in the record on why this woman was moved? You say it was not because it was a voluntary request. I thought that spot, but that's not y'all's position. It was something, another reason for the Miss Deanna felt that they were not going to get along the following year. That was a combination of a conversation and the letter, which led Deanna to believe one, she was unhappy and two, but there's something you want a new beginning. There's something in the record that then, and then maybe I've dismissed it because I really, I thought the school's argument was that there had been a request, but you, I hear what you're saying. Your position is that is not the justification. The justification was the principal just didn't want her there. It was clear that, yeah, that coming back to that school, that principal wouldn't be happy and she didn't think Dr. Collins would be happy. Okay. What does that have to do with dread?  it doesn't. And it's certainly not with age under the gross doctrine, under the gross case. We never get to the, but for, I mean, I don't, you know, all of these cases have a certain degree of, you know, differences of recollection and the thing and whether, you know, I, I don't know whether maybe one group said maybe the principal thought she wanted to transfer and the others felt she didn't. Maybe they transferred because she was unhappy or because there was, first of all, the conflict of department head and the principal and everything. But what judge, we make hundreds of transfers. Where is it? Where is it all going? I mean, how does it, how does it relate to the prohibited basis under the statute? It just doesn't. That's what I, that's what I don't understand. Well, might it, might it matter if people read reads differently than you do? Would it matter? Might it matter? And I'm not saying this is the law, but if pretext alone could meet the burden, might it matter then if, yes, if the pretext is proven by, by manifest dishonesty by the employer. And in this case, isn't part of the reason why we have, while the Supreme court has, has indicated that perhaps pretext alone might be sufficient is that oftentimes a plaintiff is not going to have direct evidence of discrimination. We're not going to have that. I mean, that's, that's what desert palace said. Then you direct evidence is almost impossible to get. And we recognize that. Well, circumstantial that's the plaintiff can show that the reported just, I mean, you went round and round with judge shed here about your different rationales. It seems to be a moving target. Doesn't that suggest that there was something amiss here? It suggests confusion and misunderstanding and mistake mistake, but that's not, that's not discriminatory. Pretext necessarily suggest a pretext. You can, you can have the artists. Let's say, you know, I thought the discussion with, with judge shed was very useful because you could have a principle saying, I think she wants to transfer. And then the human resources saying, no, there hasn't been a formal request for a transfer. And you could have a difference of opinion between those two bodies, but it doesn't prove that they were acting. The fact that they differ among each other. And I guess the human resources department would be more attuned to the formalities of the bureaucratic process. And principal Deanna would be, and they would be wanting to dot the I's and cross the T's, which led to appellate appendix two 79, the form. I mean, because when you, when you go up to a human resources department or whatever, they're always sticklers for crossing every I and dotting every T and that that's their job to, to understand those requirements proceed in a regular fashion. But the fact that the principle construed one way and the human resources construed another way, that doesn't mean that the explanation that these two people gave, although it differed, that doesn't mean it was pretextual. I mean, there's, there's no evidence that this wasn't an honest belief, maybe mistaken or, or, or, or whatever, but I'm not sure it indicates that it's a difference of opinion between a necessarily indicate pretext. And unfortunately, my experience representing public education, I see it all the time. You do see it all the time for principles. You see what pretext, not pretext. You see that folks downtown digging deeper and getting it right. Paperwork wise and characterizing these things as they should be. Instead of the more subjective feelings of a principal who's saying, I've got a problem in my school. I've got to fix it. I can't tell you how many teachers take action more informally than school principals. And I can't tell you how many school principals take action more informally than the front office. But it doesn't mean that, that either the teacher or the principal or the front office or however far up you go, it doesn't mean that they're pretextual as part of this perspective of the job. Precisely. And I think it falls into that exception in Reeves for these minor non-significant differences in the story. I mean, Reeves is an opinion that allows for some play in the joints. Correct. On this sort of thing. And the cases afterwards have indicated that. Thank you very much. I guess we were out of questions. Maybe not. Okay. If this was a mistake, why did they not just say he made mistakes in during the course of the deposition, during the course of litigation at one point in time, the litigation, they're saying one thing, another time they're saying another thing. Then when Miss Collins wants to get her personal property out of her office, Miss Deanna locks her out of it and would not let her get her personal property. What does that talk about Miss Deanna? What I want to say, so is Judge Diaz hit on something that Supreme Court had said many times is motivation of an employer is very, very difficult, sophisticated, difficult to discern. Sophisticated employers now know how to hide things. Did you know, did you know that the school really moved your client because Miss Deanna just didn't like her? There was nothing in record to do that, to say that this is, this is a third reason has been, I've been given by a defendant. There's nothing to indicate that they did that. Nothing in the record that she didn't like her. Miss Deanna never said she didn't like her. In fact, according to my client, they got along. Well, whatever, there's plenty of to indicate that the relationship wasn't exactly going swimmingly. Okay. Well, in any event, outside from that motivation is a sophisticated employers. Now know how to, uh, how to do things. Sub Rosa to, uh, to meet their ends. Now, uh, I'm having my note here. Oh, here's why, why, why do you, why do you think on this record, the school moved your client? Not, not what, what reason do they give on this record? She wanted somebody younger. She wanted somebody younger. That reason on the record. We don't have a reason on a record. I don't have it. I don't have anything in a record to show that, but that's, that's, well, I thought, I thought he, I thought you thought that the school was taking your client's letter as a request for a transfer. That's not what the school did in your opinion. No, we, we never got contended at the plaintiff. Never said that. Uh, you're not listening to what I'm asking you. I'm asking you what you contended. I'm asking you, what did you think the school contended? Well, during the course of litigation at one, say, uh, at one point they said that, uh, uh, um, that she wanted the transfer. Then when I took Dr. And based on what did they say? She wanted the transfer, the letter and, and, and an affidavit from, uh, miss, uh, Deanna that says, well, I had a conversation with her, which my client, and then what they changed to in your mind. Well, in my mind is when I took Dr. Bond's deposition, I asked him, here's this form that says, this is not voluntary. Uh, is it voluntary? Uh, if it's voluntary, where's the paperwork from my client? In fact, what'd you take from that? I'm asking you, I'm taking that, that, that, that they couldn't get their, uh, uh, story straight, which is the, which is one reason why I think there's pretext. The, the other thing is this, that she received the letter within a week before school was started. Nobody talked to her. This is a lady who's been there 30 years as department head. But, but it, you know, the title seven isn't a general employment supervisor. It doesn't, it, it's unfairness. I understand it. It, the courts have made that point over and over again. There has to be some reason to believe that a prohibited basis was at the heart of a personnel action. And that's what I'm not seeing. Well, your honor, I'm going to quote from Burgess versus Guerin. It's a unpublished, published opinion here. Uh, 10 dash 20 81 is citation February 17, 2012. A panel of this court said Reeves did allow, however, that a prima facie case of discrimination combined with evidence of pre sex might fail to sustain a jury's finding of liability in unique situations where the record conclusively revealed some other non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue. And there was abundant and uncontroverted independent evidence that no discrimination had occurred. And it said, it cited, uh, Murrell versus ocean Mecca, uh, motel two 62. Um, I think it's F third two 53, 2001 case that said, and this is the fourth circuit case. Once plaintiff has established a prima facie case, uh, and shown the defendant's explanation to be false. The plaintiff need not submit additional evidence of discrimination unless no rational fact finder could conclude that action was discriminatory. And just one thing in this case, there was no outside evidence of discrimination other than the fact that an African American female was terminated. And the reason it was given, it was necessitated by budgetary pressure. And she was able to take her case to trial according to this court. Thank you. All right. Thank you. We'll come down and brief counsel and um, adjourn court.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Albert Diaz